## Burns *v.* Pillsbury.

If one who has consigned goods to a firm, and thereby become its creditor, continue to have transactions of the same kind with a member, after its dissolution, he is not obliged to carry to the credit of the old firm remittances received from that member, in the absence of some additional circumstances requiring such appropriation.

An action will not lie against a factor to whom goods have been sent to be sold on commission, without a demand, or instructions to remit.

Assumpsit. The first count was for money had and received. The second set out a special contract by which the defendant, on the 18th day of October, 1837, in consideration that the plaintiff had, at his request, consigned to him certain goods and merchandize, to be sold for a reasonable reward to be paid him, promised the plaintiff to sell the same on account of the plaintiff, and to render an account of such sale, and to pay over the proceeds, on request: That the defendant thereafter sold the goods for $1,500; yet has not, though requested, paid over or accounted for the proceeds, &c.

The third count was upon an account annexed, exhibiting a balance of $387.07.

Upon trial on the general issue, it appeared that the defendant, and one David S. Purdy, partners in trade, by the name of L. C. Pillsbury & Co., on the 25th of August, 1838, applied to the plaintiff, a manufacturer of whips, informing him that they had taken the store, 118 Maiden Lane, New-York, for the transaction of a wholesale commission whip business, and soliciting consignments; proposing to advance one fourth part, and to settle once in six months, giving a note on which the plaintiff could obtain the money, and to tax the customary commissions.

Consignments were accordingly made, and remittances returned from time to time, till the 2d day of September, 1839, when notice was received by the plaintiff that the

defendant's firm was dissolved; whereupon he wrote, desiring an account of sales, which was sent by Purdy, and exhibited a balance of cash, $90.82, and goods unsold, $454.75.

After the dissolution of the firm, Purdy remained in the business, and had further dealings with the plaintiff, to whom he transmitted money.

It also appeared that in December, 1838, Pillsbury went to New-Orleans, and took with him a part of the goods, of which he sold a portion, and left the balance to be sold by another person, from whom the firm received but trifling returns.

The court instructed the jury, that upon this evidence the firm of Pillsbury & Co. were accountable to the plaintiff for all the property sold, after deducting their reasonable commissions, and such expenses as by the contract properly belonged to the plaintiff to pay; that the goods unsold at the time of the dissolution of the partnership must be in New-York, to await the plaintiff's order; that if the defendant carried them to New-Orleans, and left them in the hands of agents there to sell, and they were lost, the defendant was, as a member of the firm, liable to bear the loss, and to account for them as goods sold, unless the plaintiff assented to such a disposal of his goods:

That if the plaintiff, after the dissolution of the firm, dealt with Purdy, and had an open account with him, and received money from him without any direction as to the account to which it was to be applied, the plaintiff was not necessarily bound to apply it to the balance due to him from the firm, in preference to any balance that might be due to him from Purdy accruing since the dissolution:

That the request contained in the letter of the 2d of September, written upon receiving notice of the dissolution of the firm, was a demand sufficient for the purposes of this action.

The jury returned a verdict for the plaintiff, which the defendant, for reason of the alleged errors in the foregoing rulings and instructions, moved to set aside and for a new trial.

*Pierce*, with whom was *Fowler*, for the defendant.

1. No sufficient demand was made. The written request to state the account is not sufficient. The demand mus$^t$ be personal. *Cooley* v. *Betts*, 24 Wend. Rep. 203.

Here is only a request for an account.

2. The plaintiff was bound to apply to the demand against the firm the funds received of Purdy after its dissolution. Story on Part. 243.

*Butler*, for the plaintiff.

GILCHRIST, J. It is said that the money received by the plaintiff from Purdy after the dissolution of the firm should have been carried to the credit of the firm, and not to the credit of Purdy's account. This, if so, must be upon the ground that it was the money of the firm, or else upon the ground that the plaintiff had agreed to take Purdy alone for his debtor, and release the defendant, who was his partner in contracting the debt.

Of any express agreement to make such an exchange there is no evidence whatever in the case, nor does there appear to be any thing to take this particular instance of renewing a business with a member of a dissolved copartnership out of the general rule applicable to such cases. This is stated by the authorities to be, that transactions accruing after the change of a firm, by death or otherwise, are *primâ facie* deemed to be the independent transactions of the new firm ; Pulling on Mercantile Accounts, 52 ; Story on Part., sec. 156 ; and the mere striking the balance due from the old firm, and carrying it to a new account, opened with the new firm, will not alone extinguish the

original debt against the old firm, unless accompanied by other circumstances which establish that a new and exclusive credit is given to the new firm. Story on Part., sec. 156. Whether there has been an agreement between all the parties, that such exclusive credit shall be given to the new house, is a question of fact for the jury; *Thompson* v. *Percival*, 5 Barn. & Adol. 925; and the various circumstances that have been the subject of comment, as bearing upon the question, must be regarded, in reference to a case like the present, as evidence to go to the jury from which they may or may not infer that the new firm has been adopted in the place of the old as a debtor. In the case of an old banking-house, like that which was the subject of Lord *Mansfield's* observations in *Barclay* v. *Lucas*, 1 T. R. 291, n., and which also occurred in the case of *Simson* v. *Ingham*, and of *Hart* v. *Alexander*, upon which the remarks of Mr. Justice *Story* appear to have been founded, which are relied on in the argument, (Story on Part., sec. 157) the evidence of the change of credit would be less, that would be required to satisfy a jury, than in an ordinary commercial partnership of recent origin.

In such a case as that of one of those banking-houses, which, as Lord *Mansfield* remarked upon the occasion referred to, " continue for generations," which can be effected only by a constant succession of partners, if one retires, he does so of course upon some adjustment with the house, by which he is permitted to take with him an equivalent for what would belong to him if the house were to go into a liquidation of its affairs; and he leaves, of course, what is supposed to suffice for the discharge of all its liabilities, which are first provided for, and subject to which his own just share in the capital is ascertained. In such a case, there would of course be a fitness in appropriating any remittances which the house might make to a creditor who continues his relations with the

firm, to the satisfaction of balances due at the dissolution. This would ·be but justice to the retiring partner, as was said in the case of *Thompson* v. *Percival,* before referred to. But there is no case that goes so far as to say that, in the absence of a specific application of the money when paid, it is not a matter of option with the creditor to apply the money to which debt he pleases, provided he signify that option promptly.

But there is no evidence whatever in this case that brings it within scope of the reasons applicable to such cases. This is not so much the retiring of a partner as it is the dissolution of the firm. There is no evidence that the partner who remained to continue the trade had stipulated with the defendant to provide for the debts they owed in common, or that he received any consideration for so doing; or that the body of the funds of the firm remained with him in sufficient amount to lay the foundation of any equitable obligation on him to do so; and the case is, therefore, not one of those in which slight indications should prevail, of an agreement on the part of the plaintiff to adopt the new concern in the place of the old as his debtor. The instructions of the court on this head were, therefore, in our judgment, open to no just exception.

Upon another ground, however, the verdict must be set aside. The undertaking of this defendant and his partner ·was, to account for and pay over to the plaintiff the proceeds of the sales of whips. An account has been accordingly applied for, and has been exhibited. There is no pretence that it was otherwise than correct. But no demand has been made of the payment of the balance due, and without such demand an action cannot be maintained upon such an undertaking. This subject is fully considered, and the authorities cited, in *Cooley* v. *Betts,* cited by the defendant's counsel, 24 Wend. Rep. 203. The court in that case conclude, in harmony with those

authorities, that there must be a demand, or instructions to remit, before an action can be maintained upon the contract to sell on commission, and to account and pay over the proceeds.

For error in the ruling of the court on this point the verdict must be set aside, and a

*New trial granted.*